1
2
3                    UNITED STATES DISTRICT COURT
4                    EASTERN DISTRICT OF CALIFORNIA
5
6  ANGELA YOW,                        1:07-CV-1112-OWW-GSA
7                    Plaintiff,
8        v.                          MEMORANDUM DECISION AND ORDER
                                     RE GRANTING DEFENDANT'S MOTION
9  NATIONAL ENQUIRER, INC. and       TO DISMISS (DOC. 8)
   DOES 1 through 50
10
11                   Defendants.
12
13                 1.    INTRODUCTION

14        Defendant National Enquirer, Inc. ("National Enquirer")
15  moves to dismiss Plaintiff Angela Yow's ("Yow") complaint for
16  failure to state a claim upon which relief can be granted
17  pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff's complaint
18  alleges a cause of action for defamation per se arising from
19  statements made in the publication of the August 21, 2006 edition
20  of the National Enquirer.  Diversity jurisdiction is invoked
21  under 28 U.S.C. § 1332, based on the parties' citizenship in
22  different states and the amount in controversy in excess of the
23  $75,000 jurisdictional minimum.  Oral argument on this matter was
24  heard on February 11, 2008.

25                 2.    PROCEDURAL BACKGROUND

26        Plaintiff filed her complaint on July 31, 2007. (Doc. 1,
27  Complaint)  Defendant National Enquirer moved to dismiss the
28  Complaint on October 2, 2007. (Doc. 8, Motion)  Plaintiff opposed

                                1

the Motion on November 5, 2007. (Doc. 11, Opposition)  Defendant filed its reply to Plaintiff's Opposition on November 26, 2007. (Doc. 13, Reply)

### 3.  <u>FACTUAL HISTORY</u>

In its August 21, 2006 weekly edition, the National Enquirer magazine published a story alleging that the well-known film celebrity Mel Gibson had traveled to Modesto, California in 1990, and engaged in a binge of drinking, cocaine use, and sexual promiscuity. (Doc. 1, Complaint, ¶ 7)  The following passage of the National Enquirer August 21, 2006 story, alleged *in haec verba* in Plaintiff's Complaint, form the basis for ANGELA YOW's claim for defamation:

> During one binge at a Modesto, California bar, Mel not only swooped down on many of the women but also did drugs, charges a source.
> He was snorting cocaine in a back room surrounded by girls at the Easy Street Saloon back in 1990, according to the source, who barged in on the party. "Mel was huddled over a small mound of cocaine on top of the glass-topped desk.
> "He was snorting through a small brass tube.
> "There were four or five women around the table with him who were sharing the coke with him."
> When the manager learned what was going on, Mel and company were shown the door according to the source.
> "They escorted him out with a couple of girls in tow to continue the party elsewhere."
> On that same trip to Modesto, Fred Yow told The ENQUIRER his daughter brought Mel home after a wild night.
> "Mel ended up sleeping with her friend.  He wanted to sleep with my daughter Angela, but I told him if he tried to I'd break his face!"

(Doc. 1, Complaint, ¶ 9 and Exhibit A to the Complaint)[1]

Plaintiff alleges that the words of the offending passage quoted above although not literally stating that Plaintiff

---

[1] The National Enquirer article of August 21, 2006 story is attached to the Complaint as Exhibit A.

2

snorted cocaine with film personality Mel Gibson, have the
meaning and would be understood by the ordinary reasonable reader
as communicating precisely that Plaintiff ANGELA YOW was one of
the "four or five women" who snorted cocaine with Mel Gibson, a
felony under the law.  (Doc. 1, Complaint, ¶ 10)  Plaintiff
alleges the article asserts that ANGELA YOW was one of the couple
of girls with whom Mel Gibson left the Easy Street Saloon after
the manager of the saloon discovered that Mel and a group of
"four or five women," including the couple of girls who left the
saloon with Gibson, were snorting cocaine with Gibson.  Plaintiff
asserts the ordinary reasonable reader would understand the
article to convey the meaning that the couple of girls who left
with Gibson from the Easy Street Saloon were the same two women,
who went on to continue "a wild night" with Gibson, referred to
in the sentences that immediately follow, in the next paragraph,
which actually name Plaintiff. (Doc. 1, Complaint, ¶ 11)
Plaintiff alleges in her Complaint that the passage is false as
she did not use cocaine with Mel Gibson, was not in the presence
of cocaine that evening, nor did she witness anyone using
cocaine, nor has she ever used cocaine. (Doc. 1, Complaint, ¶ 12)
Plaintiff alleges the defamatory statements proximately caused
damages to her reputation, and inflicted severe emotional
distress, humiliation, anguish, and embarrassment. (Doc. 1,
Complaint, ¶ 16)  Plaintiff is a private figure for purposes of
this defamation action.

### 4.   <u>JURISDICTION</u>

Plaintiff is a citizen and resident of the state and Eastern
District of California. (Doc. 1, Complaint, ¶¶ 1, 15)  Defendant

is a corporation with its principal place of business in Florida
and the publisher of a weekly tabloid magazine. (Doc. 1,
Complaint, ¶¶ 1, 4) The Complaint seeks damages in excess of
$75,000, exclusive of interest and costs.   Jurisdiction exists
under 28 U.S.C. § 1332.

5.   <u>STANDARD OF REVIEW</u>

A.   12(b)(6) MOTION

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss
may be made if the plaintiff fails "to state a claim upon which
relief can be granted."  However, motions to dismiss under Fed.
R. Civ. P. 12(b)(6) are disfavored and rarely granted. *Gilligan
v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).
In deciding whether to grant a motion to dismiss, the Court
"accept[s] all factual allegations of the complaint as true and
draw[s] all reasonable inferences" in the light most favorable to
the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th
Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983
(9th Cir. 2002).  A court is not "required to accept as true
allegations that are merely conclusory, unwarranted deductions of
fact, or unreasonable inferences." *Sprewell v. Golden State
Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The question presented is not whether the plaintiff will
ultimately prevail; rather, it is whether the plaintiff could
prove any set of facts in support of her claim that would entitle
her to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73
(1984).  "A complaint should not be dismissed unless it appears
beyond doubt that plaintiff can prove no set of facts in support
of his claim which would entitle him to relief." *Van Buskirk v.*

4

1   *CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

2   ## 6.   __STATE CLAIMS__

3       Plaintiff alleges in her Complaint one cause of action for

4   defamation per se.

5   **A.   DEFAMATION PER SE**

6       Defendant moves to dismiss Plaintiff's claim on the ground

7   that the portion of the article Plaintiff alleges to be

8   defamatory per se is not "of and concerning" Plaintiff.

9   Plaintiff's claim is for defamation per se against Defendant

10  National Enquirer.   Plaintiff asserts:

> 8.   The National Enquirer story named the Plaintiff
> ANGELA YOW as one of the group of "four to five women"
> who engaged in illicit activity with Mel Gibson.   The
> stor[y] would have been understood by the ordinary
> reasonable reader as communicating the defamatory
> allegation that the Plaintiff ANGELA YOW used cocaine
> with Mel Gibson and the other woman referred to in the
> story.
> ---
> 10.   The offending passage quoted above in paragraph 9
> does not literally state "ANGELA YOW snorted cocaine
> with Mel Gibson." The passage quoted above in Paragraph
> 9, however, would be understood by the ordinary
> reasonable reader as communicating precisely that.   The
> ordinary reasonable reader would conclude that the
> passage was intended to convey the meaning, and did in
> fact convey the meaning that Plaintiff ANGELA YOW
> snorted cocaine with Mel Gibson.
> 11.   The ordinary reasonable reader would understand
> the passage quoted above in paragraphs 9 as intended to
> convey, and as in fact conveying, the following
> meaning: Angela YOW was on[e] of the two girls with
> whom Mel Gibson left the Easy Street Saloon, after the
> manager of the saloon discovered that Mel and a group
> of "four or five women," including the two women who
> left the saloon with Gibson, were snorting cocaine with
> Gibson...
> ---
> 13. The passage...is defamatory per se, in that the
> plain and manifest meaning of the passage is that
> ANGELA YOW used cocaine, a felony.
> 14.   The Defendant, National Enquirer, Inc., published
> the false defamatory statements with negligence and
> with actual malice, with knowledge of falsity or
> reckless disregard for truth or falsity.

5

(Doc. 1, Complaint, ¶¶ 8,10-11,13)

Plaintiff seeks general damages, punitive damages, an apology and retraction. (Doc. 1, Complaint, ¶ 17)

Defamation per se occurs when a statement, is defamatory on its face, that is untrue. A defamation per se claim is actionable without proof of special damages. Defamation can take the form of slander or libel. The definition of libel on its face is: "[a] libel [writing] which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Cal. Civ. Code § 45a. A statement is libelous per se if it defames the plaintiff on its face, that is, without the need for extrinsic evidence to explain the statement's defamatory nature. "Material libelous *per se* is a false and unprivileged publication by writing which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." *Washburn v. Wright*, 261 Cal.App.2d 789, 797, 68 Cal.Rptr. 224 (Cal.Ct.App. 1968).

"An allegation the plaintiff is guilty of a crime is libelous on its face." *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, 117 Cal.App.4th 1138, 1145 fn. 7, 12 Cal.Rptr.3d 493 (Cal.Ct.App. 2004); *Barnes-Hind, Inc. v. Sup.Ct.*, 181 Cal.App.3d 377, 385, 226 Cal.Rptr. 354 (Cal.Ct.App. 1986)("Perhaps the clearest example of libel per se is an accusation of crime.") Statements which falsely impute the commission of a crime are libelous on their face. *See Snider v. Nat'l Audubon Soc'y, Inc.*, No. CV-F-91-665 REC, 1992 WL 182186,

6

at *5, 1992 U.S. Dist. Lexis 10017, at *15 (E.D.Cal. April 14, 1992) (denying motion to dismiss where "the clear implication from the article is that plaintiff is being investigated by the I.R.S.")

"In defamation actions the First Amendment also requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042, 232 Cal.Rptr. 542 (1986)(one cannot constitutionally establish liability unless one proves that the contested statements are "of and concerning" the individual, either by name, i.e. refer personally to the individual, or by "clear implication"); *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1404, 88 Cal.Rptr.2d 843 (Cal.Ct.App. 1999); *Barger v. Playboy Enterprises, Inc.*, 564 F.Supp. 1151, 1153 (N.D.Cal. 1983) ("The courts have chosen not to limit freedom of public discussion except to prevent harm occasioned by defamatory statements *reasonably susceptible* of special application to a given individual."); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.,* 12 F.Supp.2d 1035, 1044 (C.D.Cal. 1998) ("In defamation actions, the First Amendment requires the plaintiff to establish that the statement on which the claim is based is 'of and concerning' the plaintiff"); *D.A.R.E. America v. Rolling Stone Magazine*, 101 F.Supp.2d 1270, 1289 (C.D.Cal. 2000) ("The First Amendment requires a plaintiff to establish that the statement on which the defamation claim is based is 'of and concerning' the plaintiff")  The "of and concerning" requirement does not require that Plaintiff allege that Defendant referred to Plaintiff by name as long as Plaintiff "may be identified by

**7**

clear implication." *Blatty,* 42 Cal.3d at 1044 fn. 1.  "Under California law, '[t]here is no requirement that the person defamed be mentioned by name...It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff...[or] if the publication points to the plaintiff by description or circumstances tending to identify him.'" *Church of Scientology of California v. Flynn,* 744 F.2d 694, 697 (9th Cir. 1984) (quoting *Di Giorgio Fruit Corp. v. AFL-CIO*, 215 Cal.App.2d 560, 569, 30 Cal.Rptr. 350, 355 (1963)).

In a defamation action the threshold question is whether the statement on which a plaintiff's claim is based, specifically refers to, or is "of and concerning" Plaintiff YOW in some way. If the Court finds the statements are "of and concerning" Plaintiff, then the Court undertakes the analysis whether the statements are capable of conveying defamatory meaning and it is for the jury to determine if it was so understood. *See Couch v. San Juan Unified School Dist.,* 33 Cal.App.4th 1491, 1500, 39 Cal.Rptr.2d 848 (Cal.Ct.App. 1995) (whether a statement is "reasonably susceptible of an interpretation which implies a provably false assertion of fact-the dispositive question in a defamation action-is a question of law for the court."); *see also Isuzu Motors Ltd.*, 12 F.Supp.2d at 1044-48.

Plaintiff's Opposition skips to the second part of the analysis in their argument and does not address the "of and concerning" portion, on the basis that YOW is mentioned in the article itself.  Plaintiff does not extensively address the "of

1  and concerning" requirement.[2]   Plaintiff argues:

2                         All Yow must plead are facts sufficient to permit this
3  Court to determine that a reasonable jury *could*
   conclude that a reasonable reader could have understood
4  the *Enquirer* article as communicating the false and
   defamatory statement that Yow used cocaine.   The Court
5  need not find that Yow's reading of the article is the
   *only* permissible meaning that might reasonably be
6  ascribed to it.   The Court need not find that it is the
   *necessary* construction.   The Court must merely be
7  satisfied that *one* of the reasonable meanings of the
   *Enquirer* article is that Yow used cocaine.

8  (Doc. 11, Opposition, p. 3:17-23)   Plaintiff concedes that she

9  must demonstrate the allegation of cocaine use is "of and

10  concerning," her, as compelled by both common-law and

11  constitutional law doctrine but denies that *Blatty* stands for the

12  clear implication rule.   Plaintiff attempts to distinguish *Blatty*

13  as an injurious falsehood claim: "The phrase was rather a mere

14  point of emphasis underscoring the importance of not letting

15  defamation cases proceed when there is nothing palpable to

16  demonstrate the defamation targeted plaintiff." (*Id*. at p. 6:5-7)

17       Other district courts in the Ninth Circuit and California

18  state courts have interpreted *Blatty* to mean that the individual

19  must be specifically referred or be identifiable by clear

20  implication in defamation cases. *See Ferlauto*, 74 Cal.App.4th at

21  1404 ("He cannot constitutionally establish liability unless he

22  proves that the contested statements are 'of and concerning,' him

23

24  _____

25     [2] Plaintiff suggests the "of and concerning" requirement is
   determined from the totality of the article.   Because the article
26  specifically names Plaintiff as one of the women who experienced
   "a wild night" with Mel Gibson, along with her friend, who slept
27  with Mel Gibson, the defamatory statements concerning coke use
   can reasonably refer to her and are "of and concerning" her.

28

**9**

either by name or by 'clear implication.'")(citing *Blatty*, 42
Cal.3d at 1046); *Church of Scientology of California*, 744 F.2d at
697; *Isuzu Motors Ltd.,* 12 F.Supp.2d at 1044-45 (C.D.Cal. 1998)
("To satisfy this requirement, 'the plaintiff must effectively
plead that the statement at issue either expressly mentions him
or refers to him by reasonable implication.'") (citing *Blatty*, 42
Cal.3d at 1046); *D.A.R.E. America*, 101 F.Supp.2d at 1289 ("To
satisfy this requirement, 'the plaintiff must effectively plead
that the statement at issue either expressly mentions him or
refers to him by reasonable implication.'")(citing *Blatty*, 42
Cal.3d at 1046).

     Plaintiff's Opposition cites cases that do not address the
"of and concerning" requirement.  In *Condit v. National Enquirer,
Inc.,* 248 F.Supp.2d 945 (E.D.Cal. 2002), the Plaintiff was the
wife of former Congressman Gary A. Condit and the statements at
issue alleged that she phoned his Washington D.C. apartment and
verbally attacked intern Ms. Chandra Levy before Ms. Levy's
disappearance.  While the court addressed the question of
defamatory meaning, "of and concerning" was not at issue.
*Eastwood v. National Enquirer*, 123 F.3d 1249 (9th Cir. 1997),
does not address whether the article or statements were "of and
concerning" Clint Eastwood.  That decision presumed the article
was "of and concerning" and addressed whether actual malice could
be inferred from labeling the interview as "exclusive," by its
use of the phrase "Exclusive Interview" on the front page,
suggesting that Mr. Eastwood willingly gave an "exclusive
interview to the Enquirer."  In *Solano v. Playgirl*, 292 F.3d 1078
(9th Cir. 2002), an actor, formerly on the T.V. series Baywatch,

was featured on the cover of adult magazine Playgirl shirtless and wearing lifeguard trunks.  The magazine was known for its nude photographs of men.  Plaintiff sued the magazine for false light and misappropriation of his likeness.  Plaintiff alleged that the cover photo of him intentionally created the false impression that he appeared nude in a photograph in the interior of the magazine and by inference that Plaintiff was willing to degrade himself and endorse the magazine.  The Court did not address an "of and concerning" issue. *Kaelin v. Globe Communications Corp.,* 162 F.3d 1036, 1037 (9th Cir. 1998) analyzed whether the headline "COPS THINK KATO DID IT!" "falsely insinuated that the police believed that [plaintiff Kato Kaelin] committed [murder]," not whether the headline was "of and concerning" Kaelin.

Plaintiff's Complaint replicates portions of the August 21, 2006 National Enquirer Article, titled "Mel Gibson, Shocking Tell-All!, 15 Years of Affairs, His Cocaine Frenzy."  Plaintiff's claim for defamation per se centers around two defamatory statements: "There were four or five women around the table with him who were sharing the coke with him." and "They [Easy Street Saloon] escorted him out with a couple of girls in tow to continue the party elsewhere."  Plaintiff is mentioned in the paragraph thereafter, in the next three sentences, which state: "On that same trip to Modesto, FRED YOW told the National Enquirer his daughter brought Mel home after a wild night. 'Mel ended up sleeping with her friend.  He wanted to sleep with my daughter Angela, but I told him if he tried...'"

Plaintiff does not allege the statements that specifically

1  mention her are defamatory per se, rather that the statements

2  that precede the text in which she is identified, are defamatory

3  per se, and can be reasonably interpreted to refer to her.  She

4  argues that the statements alleging that four or five

5  unidentified woman allegedly doing coke with Mel Gibson at Easy

6  Street Saloon, included her and are defamatory per se.  She

7  characterizes the statements concerning a couple of girls who

8  left in tow with Gibson (those couple of girls are reasonably

9  inferred to be part of the four or five women who engaged in coke

10  use with Mr. Gibson) to continue the party elsewhere are

11  defamatory per se to her.

12      While Plaintiff alleges in one paragraph of her Complaint,

13  that the "The story would have been understood by the ordinary

14  and reasonable reader as communicating the defamatory

15  allegation... YOW used cocaine with Mel Gibson and the other

16  women referred to in the story," (Doc. 1, Complaint, ¶ 8), the

17  Complaint pinpoints one, or possibly two defamatory statements:

18  That four or five women engaged in cocaine with Mel Gibson at the

19  Easy Street Saloon; a couple of those girls left the Saloon with

20  Mel Gibson; and Plaintiff should be deemed to be one of the

21  women.  Plaintiff's Complaint mentions no less than five times in

22  its five pages that the article defames her by conveying the

23  meaning that she was one of the "four or five women" using

24  cocaine with Gibson at Easy Street Saloon and/or one of the

25  "couple of girls [Gibson had] in tow;" who were escorted out of

26  the Easy Street Saloon:

27          "The stor[y] would have been understood by the
           ordinary and reasonable reader as communicating the
28          defamatory allegation that the Plaintiff ANGELA YOW

12

used cocaine with Mel Gibson and the other women referred to in the story" (Doc. 1, Complaint, ¶ 8)

"The offending passage quoted above in paragraph 9 does not literally state 'ANGELA YOW snorted cocaine with Mel Gibson.'  The passage quoted above in Paragraph 9, however, would be understood by the ordinary reasonable reader as communicating precisely that." (*Id.* at ¶ 10)[3]

"The ordinary reasonable reader would conclude that the passage was intended to convey the meaning, and did in fact convey the meaning that Plaintiff ANGELA YOW snorted cocaine with Mel Gibson." (*Id.*)

"The ordinary reasonable reader would understand the passage quoted above in paragraphs 9 as intended to convey, and as in fact conveying, the following meaning: Angela YOW was on[e] of the two girls with

---

[3] **Paragraph 9 of Plaintiff's Complaint states:**

"The following passage of the National Enquirer of August 21, 2006 story contains the false defamatory statements upon which ANGELA YOW bases her claim for defamation:
During one binge at a Modesto, California bar, Mel not only swooped down on many of the women but also did drugs, charges a source.
He was snorting cocaine in a back room surrounded by girls at the Easy Street Saloon back in 1990, according to the source, who barged in on the party. "Mel was huddled over a small mound of cocaine on top of the glass-topped desk.
"He was snorting through a small brass tube.
"There were four or five women around the table with him who were sharing the coke with him."
When the manager learned what was going on, Mel and company were shown the door according to the source.
"They escorted him out with a couple of girls in tow to continue the party elsewhere."
On that same trip to Modesto, FRED YOW told The National Enquirer his daughter brought Mel home after a wild night.
"Mel ended up sleeping with her friend.  He wanted to sleep with my daughter Angela, but I told him if he tried to I'd break his face!"

13

> whom Mel Gibson left the Easy Street Saloon, after the manager of the saloon discovered that Mel and a group of "four or five women," including the two women who left the saloon with Gibson, were snorting cocaine with Gibson." (*Id.* at 11)

> "The natural and logical reading of the passage is that the two women who left with Gibson from the Easy Street, Saloon were the same two women who went on to continue the "wild night" with Gibson referred to in the sentence immediately followed." (*Id.*)

> "Those two women, one of whom was identified as Plaintiff, ANGELA YOW, were plainly intended to be understood, and would have been understood, as two of the "four or five" women in the group who were alleged to have been using cocaine with Gibson." (*Id.*)

> "Thus the Plaintiff ANGELA YOW would clearly be understood by the ordinary reasonable reader as one of the women at Easy Street Saloon who shared cocaine with Gibson." (*Id.*)

The statements about four or five women doing coke with Mel Gibson at Easy Street Saloon and the couple of girls in tow who left the saloon with Mel Gibson, do not specifically identify Plaintiff ANGELA YOW by name. It must be determined from the reference to cocaine use by "four or five women" at Easy Street Saloon and the "the couple of girls in tow" that left with Mel Gibson, whether the statements are "of and concerning" Plaintiff by clear implication, to enable a jury to infer that Plaintiff and her friend were the couple of girls who left in tow with Mel Gibson, after being escorted out, and who had used cocaine in the back room.  "The 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, to those who are direct object of criticism and denies it to those who merely complain of nonspecific statements that they believe cause them some hurt." *Blatty*, 42 Cal.3d at 1044.

To survive a motion to dismiss, "the plaintiff must

14

effectively plead that the statement at issue either expressly
mentions [her] or refers to [her] by reasonable implication." *Id.*
at 1046.   The paragraphs that describe cocaine use by Mel Gibson
with the "four or five women" commences with

>            "During one binge at a Modesto, Calif., bar..."

  It goes on the describe:

>            "He was snorting cocaine in a back room surrounded by
>            girls at the Easy Street Saloon back in 1990,...".

  The article then continues:

>            "There were four or five women around the table with
>            him who were sharing the coke with him."

  The article then states:

>             "They escorted him out with a couple of the girls in
>            tow to continue the party elsewhere."

  The introductory phrase to the paragraph which specifically
names Plaintiff begins with:

>            "On that same trip to Modesto...his daughter brought
>            Mel home after a wild night."

     From this text, the following questions are raised:  whether
Plaintiff was one of the "four or five women" engaging in cocaine
use with Mel Gibson in a back room at the Easy Street Saloon;
and/or whether she was one of the "many women" Mel "swooped down
on;" and/or who are the unspecific persons included in the words
"Mel and company;" and/or whether she was one of the "couple of
girls" who left in tow with Gibson, and/or whether either of
those "couple of girls" was among the group of four or five women
with whom Gibson had used cocaine; and/or whether the words in
the next paragraph that start: "On that same trip," denotes a
separate incident when Gibson arrived at YOW's residence and was
confronted by her father from the night cocaine was used at the

15

1   Easy Street Saloon.

2       Examining the statements in context and the totality of the
3   article the most natural reading of the defamatory statements and
4   the subsequent statements that mention Plaintiff by name, is that
5   the defamatory statements concerning cocaine use with Mel Gibson
6   expressly describes four to five unidentified women, who
7   surrounded Gibson on a particular night at the Easy Street
8   Saloon, where they snorted a mound of cocaine.  This may or may
9   not be "a wild night" in which Mel Gibson engaged in an extra-
10  marital affair with Plaintiff's friend.  The cocaine use was
11  during the "same trip," but not necessarily the same night that
12  ANGELA YOW brought Mel Gibson home to her father's residence
13  after a wild night.  The phrases are set forth in separate
14  paragraphs, one of which begins with the words "On that same
15  trip," which suggests that the Easy Street incident was not the
16  same night YOW brought Gibson home.  The title to the articles
17  exposits that the article concerns not only cocaine use by Mel
18  Gibson but his extra-marital affairs.  The YOW incident describes
19  an extramarital affair with Plaintiff's friend (not Plaintiff).
20  It is also necessary for the reader to infer that the girls who
21  left the Easy Street Saloon with Gibson were among the four to
22  five women who shared cocaine with him in the back room.  If the
23  reader connects the "one binge in Modesto" where Mel not only
24  swooped down on "many of the women," but also did drugs with four
25  or five women at the Easy Street Saloon, the reader must still
26  determine whether the "couple of girls in tow" who were escorted
27  out of the Easy Street Saloon were among the girls who surrounded
28  Mel in the back room, and were among the four to five women of

                                16

all the women in the back room who used cocaine.

The "four to five" women actually said to be engaged in cocaine use with Gibson are unidentified.  Plaintiff argues that under the group libel bar exception, four of five persons is a small enough group to overcome the bar.  This is true *if* Plaintiff is an easily identifiable member of the group.  *Blatty, a* California Supreme Court decision held that a "[i]f the group is small and its members easily ascertainable, [the] plaintiff[] may succeed," on an individual action based on the defamatory matter being directed at the group. *Blatty,* 42 Cal.3d at 1046 (however, defamatory matter aimed at any group numbering over twenty-five members would not permit an individual to demonstrate that the statements were of and concerning her or him); *see also Noral v. Hearst Publications,* 40 Cal.App.2d 348, 104 P.2d 860 (Cal.Ct.App. 1940) (libelous statement directed at officials of the Workers' Alliance labor union insufficient where despite allegation that plaintiff was one of three top-paid officials, there where at least 162 officials besides state officers); *Barger v. Playboy Enterprises, Inc.*, 564 F.Supp. 1151 (N.D.Cal. 1983)(group libel rules barred defamation suits); *Neiman-Marcus v. Lait*, 13 F.R.D. 311 (S.D.N.Y. 1952)(where group referred to is too large, courts presume no reasonable reader would take the statements as literally applying to each individual member).

The Restatement Second of Torts also addresses small group libel claims: "When a defamatory matter refers to a small group of persons, an individual member may recover if (1) the group or class is so small that the matter can reasonably be understood to refer to the member, or (2) the circumstances of publication

reasonably give rise to the conclusion that there is a particular reference to the member." Restatement (Second) of Torts, section 564A.  For example if a newspaper publishes a statement that the officers of a corporation have embezzled its funds and there are only four officers, each of the officers can be found to be defamed. *Id.* at Comment b.  The Ninth Circuit in *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984) found that the group libel bar did not apply when: "CSC's claim would also fall within a well-established exception to the group libel rule that allows a group member to sue upon a showing that 'the circumstances of a publication reasonably give rise to the conclusion that there is particular reference to the member.'" *Id.* at 697 fn. 5

The entire article attached as Exhibit A to Plaintiff's Complaint also includes the following sentence after the section of the article quoted by Plaintiff in her Complaint:

> He was beyond drunk. My nephew told me Mel had been snorting cocaine.  The cops knew it.  If it had been you or me, we would have ended up in jail.

(Doc. 1, Complaint, Exhibit A)[4]  The court may consider exhibits

---

[4] **The following is the portion of the National Enquirer Article that includes the statements in Plaintiff's Complaint and the additional sentence following that portion:**

**During one binge at a Modesto, California bar, Mel not only swooped down on many of the women but also did drugs, charges a source.**
**He was snorting cocaine in a back room surrounded by girls at the Easy Street Saloon back in 1990, according to the source, who barged in on the party. "Mel was huddled over a small mound of cocaine on top of the glass-topped desk.**
**"He was snorting through a small brass tube.**
**"There were four or five women around the table with him who**

18

submitted with the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 fn. 19 (9th Cir.1989); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.,* 12 F.Supp.2d 1035, 1042 (C.D.Cal. 1998). Plaintiff has not alleged this statement is attributable to Fred Yow's nephew, (or Plaintiff's cousin). This statement could be read to mean that Fred Yow's nephew personally observed Mel Gibson snorting cocaine.

## CONCLUSION

The law requires that defamation be of and concerning the Plaintiff by clear implication. Considering the article as a whole, the title: "Mel Gibson, Shocking Tell-All! 15 Years of Affairs, His Cocaine Frenzy" established the tone for the contents of the article, which identified cocaine use, over-consumption of alcohol and extra-marital affairs by film-celebrity Mel Gibson. The article refers to a number of incidents of drug and alcohol use, including a specific incident

---

were sharing the coke with him."
When the manager learned what was going on, Mel and company were shown the door according to the source.
"They escorted him out with a couple of girls in tow to continue the party elsewhere."
On that same trip to Modesto, FRED YOW told the National Enquirer his daughter brought Mel home after a wild night. "Mel ended up sleeping with her friend. He wanted to sleep with my daughter Angela, but I told him if he tried to I'd break his face!"
"He was beyond drunk. My nephew told me Mel had been snorting cocaine. The cops knew it. If it had been you or me, we would have ended up in jail."

(Doc. 1, Complaint, Exhibit A)

19

on an unidentified night at the Easy Street Saloon in Modesto, California where Plaintiff lives.  The article describes events at the Easy Street Saloon where Gibson "swooped down on many of the women," snorted cocaine in a back room surrounded by girls, including four or five women who were around the table with him, where Mel was huddled over a small mound of cocaine on top of a glass-topped desk.  Four or five women shared the coke with Gibson.  None of the women or girls in the Easy Street Saloon are identified.  Plaintiff argues that the timing is not stated.

The article goes on to state that the Easy Street Saloon manager learned what was going on, showed Mel "and company" (not identifying anyone in the "company") the door, and "they escorted him out with a couple of the girls in tow to continue the party elsewhere."  There is no identification of the couple of girls in tow who left with Mel.  The immediately following paragraph begins "On that same trip to Modesto," the Plaintiff's father told the ENQUIRER his daughter [ANGELA YOW] brought Mel home after a wild night.  Mel ended up sleeping with her friend, not with ANGELA YOW.  Plaintiff's father threatened Mel with violence if Mel slept with Plaintiff.  The next paragraph is in quotes, is not directly, but, is inferentially attributed to Plaintiff's father and reports that, "my nephew told me Mel had been snorting cocaine."

From the totality of these words, a reasonable reader could infer that because the binge occurred at a Modesto bar, where cocaine was snorted in a back room by four or five women, resulting in Gibson's being shown to the door and escorted out of the bar with a couple of "the girls" in tow to continue the party

**elsewhere, Plaintiff and her friend (two girls) were among those who used cocaine with Gibson, although the word "girls" not women is used to refer to the couple of people who left with Gibson. Although, "the threat of a clearly nonmeritorious defamation action ultimately chills the free exercise of expression;"** *Baker v. Los Angeles Herald Examiner***, 42 Cal.3d 254, 268 (1986), it cannot be determined as a matter of law that a reasonable reader giving the ordinary meaning to the words of the article, would not clearly identify Plaintiff as one of the women in the back room who used cocaine with Gibson and then was one of the couple of girls escorted out of the bar with Mel Gibson, who took him home with her friend.  The language of the article marginally satisfies the "of and concerning" retirement as to Plaintiff's defamation per se claim.  Defendant's Motion to Dismiss is DENIED.**

IT IS SO ORDERED.

**Dated:     March 9, 2008**                          **/s/ Oliver W. Wanger**
                                                     UNITED STATES DISTRICT JUDGE